STATE OF CONNECTICUT *v.* HUBERT J. SINGLETON

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 12—decision released December 27, 1977

*Herbert R. Scott,* with whom, of the Massachusetts bar, was *Susan Holmes,* for the appellant (defendant).

*George D. Stoughton,* state's attorney, for the appellee (state).

House, C. J. On a trial to a jury, the defendant was found guilty of misconduct with a motor vehicle in violation of § 53a-57 of the General Statutes in that he "with criminal negligence in the operation of a motor vehicle or in consequence of his intoxication while operating a motor vehicle, caused the death of another person." From the judgment rendered on the verdict, he has taken the present appeal.

We are handicapped in reviewing the defendant's claims of error by his failure to comply with the requirements of § 631A of the Practice Book that, with respect to claimed errors in evidential rulings of the court, the brief contain the questions objected to, the basis of the objection, if any, the answer, if any, the ruling and the exception with appropriate references to the page or pages of the transcript. See *State* v. *Roberson,* 173 Conn. 97, 101, 376 A.2d 1089. Since the transcript in this case

exceeds 1000 pages, the failure of the defendant to comply with the provisions of § 631A of the Practice Book with respect to page references to the transcript places an intolerable burden on the court. The defendant, however, has fully briefed both his claim of error in the court's denial of his motion to suppress evidence concerning the testing of a sample of the defendant's blood and his claim that the court erred in refusing to set aside the verdict. Those are the principal claims of error which the defendant has briefed and decision as to them is decisive of the merits of the appeal.

The case arose out of the collision of two automobiles on a highway in Bristol at about 9 p.m. on September 23, 1973. One of the vehicles was operated by the defendant and the other by Renauld LaMarre who died as a result of the collision. The defendant was taken from the scene of the accident to the Bristol Hospital where a sample of his blood was taken and analyzed to determine the content of alcohol in his system. The defendant moved to suppress all evidence concerning the taking of the blood sample and the results of tests and he claims that the court erred in denying his motion.

In the absence of a finding, we have examined the transcript to determine whether the evidence supports the ruling of the court. There was evidence in the statement of facts in the state's brief which was not challenged by the defendant from which the court could find that at the time the blood sample was taken by the attending physician at the hospital the defendant was not under arrest or in police custody (and indeed was not arrested until December 7, 1973), that he was calm, alert and cooperative, that he was told that the blood was

being taken in order to determine the content of alcohol in his system, and that upon being asked whether he was willing to give a specimen of his blood for examination he willingly consented to the taking of the sample by the doctor. After hearing all the evidence, the court found as a question of fact that the defendant "did give his consent, truly voluntarily." The question of consent is one of fact to be decided by the trial court upon the evidence together with the reasonable inferences to be drawn from it. *State* v. *Hanna,* 150 Conn. 457, 471, 191 A.2d 124. Voluntariness is to be determined from the totality of the surrounding circumstances. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854.

Under the circumstances, there appears to have been no requirement for a *Miranda*-type warning (*Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694) before the defendant consented to the taking of the blood sample by the attending physician. It was not taken in the course of a custodial interrogation by the police or in a "coercive environment." See *Oregon* v. *Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714; *State* v. *Bennett,* 171 Conn. 47, 53, 368 A.2d 184; *State* v. *Schaffer,* 168 Conn. 309, 314, 362 A.2d 893; *State* v. *Szabo,* 166 Conn. 289, 292, 348 A.2d 588. Nor do we find merit in the defendant's contention that evidence as to the blood sample should have been excluded because the procedural steps for the taking and testing of the sample as set out in § 14-227a (b) of the General Statutes were not followed. By its express terms, the procedural requirements of that section apply to any criminal prosecution for a violation of § 14-227a (a)—the offense of operating a motor vehicle while under the influence of intoxi-

cating liquor or drugs or both. The legislature has not made it applicable to the offense with which the defendant was charged—§ 53a-57, "Misconduct with a motor vehicle."

As the brief of the defendant candidly states: "This case therefore turns on the question of consent and whether the consent in this case was voluntary." The court expressly found as a question of fact that the defendant "did give his consent, truly voluntarily," and the evidence amply supports this finding. There was no error in the decision of the court overruling the defendant's motion to suppress evidence concerning the sample of the defendant's blood.

Nor do we find any error in the court's denial of the defendant's motion to set aside the verdict. It is unnecessary to summarize the evidence in any great detail. There was evidence from which the jury could find that the defendant was returning from a club outing where he had had five or six drinks of scotch and water; that a short time before the collision he had driven his car into a curbing knocking off one of his hubcaps and while it was being replaced by a gasoline station attendant was observed to be weaving back and forth; that, thereafter, while driving in a southerly direction on a four-lane highway on which the lanes were marked he collided in the northbound lane at a point ten and one-half feet east of the center line with a car driven by Renauld LaMarre causing LaMarre's death; that the impact of the collision pushed the power brake assembly of the defendant's car against the dashboard, fixing the instruments at their approximate position as of the time of impact, and the speedometer needle on the defendant's car was

thus fixed at a little over 100 miles per hour; and, further, that a blood test taken at the hospital to which the defendant was removed showed alcohol present in his blood in the amount of .18 percent by weight. There was also evidence that one may be under the influence of intoxicating liquor with less than .10 percent alcohol by weight and the higher the percentage is the greater is the degree of intoxication.

It is to be noted that, following the language of the statute, the information was in the alternative— in that "with criminal negligence in the operation of a motor vehicle or in consequence of his intoxication while operating a motor vehicle" the defendant caused the death of another. The statute (§ 53a-3 [14]) provides that "a person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." The general verdict returned by the jury, of course, does not disclose whether the jury concluded that the death of LaMarre was due to the criminal negligence of the defendant or was a consequence of the defendant's intoxication while operating his motor vehicle. In either circumstance, there was ample evidence to support the verdict.

There is no error.

In this opinion the other judges concurred.