STATE OF CONNECTICUT *v.* DAVID A. KOLINSKY

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 17—decision released December 23, 1980

*Max F. Brunswick,* for the appellant (defendant).

*John H. Durham,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J.  After a trial to a jury, the defendant was found guilty of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1]  From the judgment rendered thereon, the defendant appeals and presses three claims of error.  He contends that the trial court erred (1) in denying his motion to suppress evidence as to items seized in the warrantless search of his car; (2) in granting the state's motion to obtain nontestimonial evidence from the defendant; and (3) in refusing to charge the jury on robbery in the second degree as a lesser included offense of robbery in the first degree.

The essential circumstances surrounding the case are not in dispute.  On October 25, 1978, shortly before 8:30 p.m., a West Haven police officer observed a car going through a stop sign without stopping in the vicinity of Pepe's Grocery Store in West Haven.  Because the police officer was responding to another call, he did not stop the car. He did note, however, that there were two white males in the car, and that the driver of the vehicle was noticeably smaller than the passenger.

---

[1] General Statutes § 53a-134 (a) (4) provides: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:  . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged."

At approximately 8:30 p.m., a witness standing outside of Pepe's Grocery Store saw a white male emerge from a similar looking car. The male was wearing a ski mask and was armed with a shotgun. The car in which he was a passenger left the area. The armed male entered the store and robbed Guiseppe DePalma of his store receipts and wallet. The robber then fled from the store and ran in the direction of Washington Manor. At the corner of Court Street and Washington Manor, the robber tripped over a wire fence; his shotgun discharged, and he dropped his ski mask, eyeglasses and the victim's wallet. He then ran up Washington Manor.

The West Haven police responded to the scene of the robbery within minutes. While cruising in the area, a police officer saw Michael Celso get out of a car parked on Washington Manor, a short distance from the robbery. Celso is a short individual and a person known to the police as actively involved in criminal activity.

The vehicle which dropped off the robber was described to the police as being dark in color, of an older vintage, small to medium in size, with a square front, a torn back seat, and a visor down on the passenger's side. The car, which was parked on Washington Manor, and from which Celso alighted, was identified by two eyewitnesses as a car which looked similar to the one involved in the robbery. One of the two witnesses had previously ruled out another car as being the vehicle which dropped off the robber. The car on Washington Manor was in fact dark in color, of an older vintage, similar in size to the one seen at Pepe's, with a torn back seat and a visor down on the passenger's side of the car.

After an identification check was made of the parked car, and it was determined that the car was registered in the defendant's name, the police, at approximately 11:30 p.m., approached the vehicle and observed a police scanner through the window. The car was then searched. In addition to the scanner, the police found a box of .12 gauge shotgun shells, several knives, and a list of area police department broadcast frequency codes.

The defendant was arrested on December 5, 1978, by the Stamford police after he was found hiding in a tree house in Stamford. After his arrest, hair samples were taken from the defendant. One of them matched one of those removed from the robber's ski mask, which was recovered by the police where the robber had tripped over the fence. The eyeglasses worn by the robber were also recovered where the robber had tripped and were positively identified as the defendant's. After a jury trial, the defendant was found guilty of robbery in the first degree, and judgment was rendered thereon.

The defendant's first claim of error is that his due process rights were violated because of the trial court's refusal to grant the defendant's motion to suppress the evidence of items seized in the search of his car. He contends that the search of his car violated the fourth amendment's prohibition against unreasonable searches and seizures because (1) the police did not have probable cause to search the car and (2) even if the police did have probable cause, a warrant should have been obtained before the search was conducted because there were no exigent circumstances making it impractical to obtain a warrant. The state claims that both probable cause and exigent circumstances existed.

The fourth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment; *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In most instances, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment . . . ." *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "In the ordinary case, therefore, a search of private property must be both reasonable and pursuant to a properly issued search warrant." *Arkansas* v. *Sanders,* 442 U.S. 753, 758, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); see *Coolidge* v. *New Hampshire,* 403 U.S. 443, 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Trupiano* v. *United States,* 334 U.S. 699, 705, 68 S. Ct. 1229, 92 L. Ed. 1663 (1948); *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

Narrowly drawn and well-delineated exceptions to the warrant requirement, however, have been established. See, e.g., *Arkansas* v. *Sanders,* supra, 759; *Coolidge* v. *New Hampshire,* supra, 454-55; *Katz* v. *United States,* supra, 357. These exceptions provide for those situations "where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Arkansas* v. *Sanders,* supra, 759.

One of the circumstances in which the constitution does not require a search warrant is where the police, under exigent circumstances, search an auto-

mobile on the street or highway based upon probable cause to believe that the vehicle contains contraband or evidence pertaining to a crime. See *Arkansas* v. *Sanders,* supra, 760; *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, reh. denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94 (1970); *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *State* v. *Tully,* 166 Conn. 126, 134–35, 348 A.2d 603 (1974); see also *Colorado* v. *Bannister,* 449 U.S. 1, 3, 101 S. Ct. 42, 66 L. Ed. 2d 1 (1980). This exception is grounded on a recognized constitutional difference between searches of and seizures from houses and similar structures and from vehicles. *Cady* v. *Dombrowski,* 413 U.S. 433, 442, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

The United States Supreme Court has noted two essential reasons for the distinction between automobiles and other private property. "First, as the Court repeatedly has recognized, the inherent mobility of automobiles often makes it impracticable to obtain a warrant. See, e.g., *United States* v. *Chadwick,* [433 U.S. 1, 12, 97 S. Ct. 2484, 53 L. Ed. 2d 538 (1977)]; *Chambers* v. *Maroney,* [supra, 49–50]; *Carroll* v. *United States,* supra. In addition, the configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property. See *Rakas* v. *Illinois,* 439 U.S. 128, 155, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) (Powell, J., concurring); *United States* v. *Chadwick,* supra; *South Dakota* v. *Opperman,* 428 U.S. 364, 368, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *Cardwell* v. *Lewis,* 417 U.S. 583, 590, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974) (plurality opinion); *Cady* v. *Dombrowski,* [supra, 441–42] (1973); *Almeida-Sanchez* v.

*United States,* 413 U.S. 266, 279, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973) (Powell, J., concurring)." *Arkansas* v. *Sanders,* supra, 761.

We take up first the defendant's claim that there was no probable cause to search his vehicle. We disagree. All of the circumstances leading up to the search of the car demonstrate that there was probable cause to search the vehicle.

The car which dropped off the robber at Pepe's was described as dark in color, of an older vintage, small to medium sized, with a square front, torn back seat, and a visor down on the passenger's side. The parked car on Washington Manor matched this description. Although the parked car could not be positively identified by two witnesses to the crime as the car which had dropped off the defendant, both of the witnesses told the police that the parked car looked like the same vehicle. Also, this car was identified as the one which had previously been seen going through a stop sign without stopping, and from which Michael Celso, a known criminal, was observed alighting shortly after the robbery.

The car, unlike any other parked in the area, was parked noticeably away from the curb; the driver's door was partially open, and the driver's window was down. It was located within a short distance of the grocery store, i.e., a "matter of hundreds of yards," on Washington Manor. After committing the robbery, the robber ran in the exact direction where the car was parked.

On the basis of these circumstances, we hold there was probable cause to search the vehicle based upon the belief that the vehicle contained evidence pertaining to a crime.

We also disagree with the defendant's claim that there were no exigent circumstances to justify the warrantless search of the car. The very term "exigency" commands that the analysis be shaped by the realities of the circumstances presented in a given case. See *United States* v. *Robinson,* 533 F.2d 578, 581 (D.C. Cir. 1976). In the present case, not only was the defendant's car inherently mobile, but it was parked on a public street where access was not meaningfully restricted. Cf. *Coolidge* v. *New Hampshire,* supra; see *Cardwell* v. *Lewis,* supra, 593. The car was parked haphazardly in a poorly lit area of the street at nighttime; the driver's door was partially open, and the driver's window was down. At the time of the search, the robber had not yet been apprehended, and the police had information which indicated that he was carrying a firearm. The robber's conduct in not returning to the car, despite its short distance from the scene of the robbery, indicated that he may have been alerted to police intentions and may have attempted to remove, or have someone else attempt to remove, the car or incriminating evidence from it. See *Cardwell* v. *Lewis,* supra, 590, 595.

The defendant strenuously contends that the fact that the car was placed under surveillance by the police for several hours after the search indicates that exigent circumstances did not exist. We disagree. The fact that the police placed the car under surveillance after the search in no way lessens the degree of exigency which existed prior to the actual search. To the extent that the police may have placed the car under surveillance before the search, but after probable cause to search arose, we point to language found in *Cardwell* v. *Lewis,* supra, where the United States Supreme Court noted:

"[W]e know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. . . . The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action." *Cardwell* v. *Lewis,* supra, 595–96; see also *Chambers* v. *Maroney,* 399 U.S. 42, 50–52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970).

The defendant's second claim is that the trial court erred in granting the state's motion to obtain nontestimonial evidence from the defendant. On January 16, 1979, the state filed a motion to obtain nontestimonial evidence from the defendant, pursuant to Practice Book, 1963, § 2189 (2) (now Practice Book, 1978, § 778 [2]). The motion, as eventually amended by the state, solely sought an examination of the defendant's eyeglasses. The court granted the motion, provided that the defendant would not be deprived of his eyeglasses for longer than a twelve hour period. The defendant urges on various grounds that the court's action deprived him of due process because the state and the court failed to comply with the mandatory requirements of Practice Book, 1963, §§ 2186 through 2190 (now §§ 775–779).

Section 3060F (c) (3) (formerly § 631A [a] [3]) of the 1978 Practice Book sets forth those items

which must be included in the appellant's brief before this court can properly review a claimed error in the ruling in any court or jury case.[2] This court has repeatedly held that in the absence of compliance with this rule, it is impossible for us to consider claimed errors in rulings on evidence. *State* v. *Singleton,* 174 Conn. 112, 113–14, 384 A.2d 334 (1977); *State* v. *Roberson,* 173 Conn. 97, 101, 376 A.2d 1089 (1977); *Long* v. *Loughlin,* 171 Conn. 291, 370 A.2d 925 (1976); *Maciejewska* v. *Lombard Bros., Inc.,* 171 Conn. 35, 37–38, 368 A.2d 206 (1976); *Tierney* v. *American Urban Corporation,* 170 Conn. 243, 251–52, 365 A.2d 1153 (1976). "In the absence of compliance with that Practice Book rule, we have no way of reviewing the trial court's ruling." *State* v. *Roberson,* supra, 101. The defendant has not complied with this rule. Thus, we cannot review the defendant's second claim.

---

[2] Practice Book, 1978, § 3060F provides: "The appellant's brief shall contain the following: . . . (c) The argument, divided under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the record or transcript. . . . (3) When error is claimed in any other ruling in a court or jury case, the brief shall include, where appropriate: the pertinent motion or pleading, if it does not appear in the printed record; the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice. When the same ruling is repeated, the brief should contain only a single ruling unless the other rulings are further illustrative of the rule which determined the action of the trial court or establish the materiality or harmfulness of the error claimed. The statement of rulings in the brief shall include appropriate references to the page or pages of the transcript."

The defendant's final claim, that the trial court erred in refusing to charge the jury on robbery in the second degree as a lesser included offense of robbery in the first degree, merits little discussion. The defendant was tried and convicted of violating General Statutes § 53a-134 (a) (4) which provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." The defendant contends that the court erred in refusing to charge, as a lesser included offense, General Statutes § 53a-135 (a) (2), which states: "A person is guilty of robbery in the second degree when he commits robbery and . . . (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."[3] It is clear that the essential difference between §§ 53a-134 (a) (4) and 53a-135 (a) (2) is the type of weapon used. The former is limited to firearms; the latter includes firearms but is not limited to them.

We have previously stated that a defendant is entitled to an instruction on a lesser offense if, and

[3] General Statutes § 53a-3 (6) defines "deadly weapon" as ". . . any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, black-jack, bludgeon, or metal knuckles." "Dangerous instrument," as defined in General Statutes § 53a-3 (7), "means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury, and includes a 'vehicle' as that term is defined in this section."

only if, the following conditions are met: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) the evidence, introduced by either the state or the defendant, or by a combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innnocent of the greater offense but guilty of the lesser." *State* v. *Tinsley,* 181 Conn. 388, 396–97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State* v. *Whistnant,* 179 Conn. 576, 579–80, 427 A.2d 414 (1980). A failure to meet all four of these conditions justifies a refusal to charge on the lesser offense. Since the defendant points to no evidence introduced by either the state or himself to demonstrate that he was armed with anything but a firearm, and since the issue of what type of weapon the defendant carried was not sufficiently in dispute to permit the jury to find the defendant innocent of the greater offense but guilty of the lesser, we conclude that the trial court did not commit error in refusing to charge on robbery in the second degree as defined in General Statutes § 53a-135 (a) (2).

There is no error.

In this opinion the other judges concurred.