STATE OF CONNECTICUT *v.* JAMES SHAW, JR.
(5173)

BORDEN, DALY and BIELUCH, Js.

Argued June 11—decision released September 8, 1987

*Stephanie Clarke,* deputy assistant public defender, for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *David Gold,* assistant state's attorney, and *Mark Buebendorf, Alice Osedach* and *Angelo Pizzolla,* law student interns, for the appellee (state).

BORDEN, J. The dispositive issue of this appeal is whether the provisions of General Statutes (Rev. to 1985) § 14-227a (d), relating to the prima facie evidentiary effect of the ratio of alcohol in the defendant's blood, are applicable to a prosecution for manslaughter in the second degree with a motor vehicle while intoxicated in violation of General Statutes (Rev. to 1985) § 53a-56b. We hold that they are not.

The defendant appeals from the judgment of conviction, after a jury trial, of manslaughter in the second degree with a motor vehicle while intoxicated, in violation of General Statutes (Rev. to 1985) § 53a-56b.[1] He claims that the trial court erred: (1) by instructing the jury that it could apply the prima facie provisions of General Statutes (Rev. to 1985) § 14-227a (d) in determining whether the defendant was intoxicated within the meaning of General Statutes (Rev. to 1985) § 53a-56b; and (2) by instructing the jury that evidence of the defendant's blood alcohol level created a rebut-

---

[1] General Statutes (Rev. to 1985) § 53a-56b provides in pertinent part: "A person is guilty of manslaughter in the second degree with a motor vehicle while intoxicated when, in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both." This statute was amended in 1985. The amendment, in part, deleted the term "intoxication" and substituted in its place the phrase "under the influence of intoxicating liquor." Public Acts 1985, No. 85-147. See *State* v. *McKenna,* 11 Conn. App. 122, 126 n.2, 525 A.2d 1374 (1987).

The defendant was also convicted of evading responsibility in violation of General Statutes § 14-224 (a). His appeal does not involve this conviction.

table presumption of his intoxication. Although the defendant has, in his brief, couched both claims of error in constitutional terms, a careful analysis of his first claim reveals that it is really a statutory claim. Because we find reversible error on that claim, we need not reach his second, or constitutional, claim.

The jury could reasonably have found the following facts. At approximately 10:40 a.m. on May 11, 1985, the defendant was driving his car at approximately sixty-one miles per hour on Congress Avenue in New Haven. The speed limit in that area was twenty-five miles per hour. The defendant crossed the yellow center line of the street and hit the victim, Clifton McCarter, who was standing at the driver's side door of a parked car, talking to Clifton Worthington, the occupant of the parked car. The impact threw McCarter into the air, and he landed head first on the defendant's windshield and rolled off onto the road. McCarter later died as a result of this impact.

After hitting McCarter, the defendant hit another parked car, pushing it approximately thirty-two feet sideways into the road. The defendant continued driving down Congress Avenue for approximately one-tenth of a mile until he was forced to stop by Worthington and Alfred Parks, another witness to the accident. The defendant exited his car and began to walk away when Worthington and Parks stopped him. Parks told him he had hit McCarter, and requested that he return to the scene. The defendant replied, "No, you go back down there." The defendant's speech was slurred, and he staggered. He had an odor of alcohol on his breath.

The police arrived promptly. They observed an empty beer bottle on the front floor of the defendant's car, near the driver's seat. Upon request, the defendant consented to a blood test. He was taken to the hospital, where samples of his blood were taken. The test results

revealed an alcohol to blood ratio of .18 percent. The defendant stated to the police that he had been drinking since approximately 5 p.m. the previous afternoon, that he was not sure when he had stopped drinking, that he had consumed more than six beers, and that he had slept for only two hours. At approximately 12:45 p.m., the police made certain observations of the defendant, and had him perform certain physical tests, the results of which were recorded on an alcohol influence report form. In addition, at approximately 1:35 p.m., the defendant gave a tape recorded statement to the police, in which he stated that he recalled hitting a car but did not see any pedestrian, and that he did not know that he had hit a pedestrian until having been told so at the hospital.

The defendant claims that the trial court erred by instructing the jury that it could use the prima facie evidentiary provisions of General Statutes (Rev. to 1985) § 14-227a (d) in determining whether the state had established that the defendant caused McCarter's death "in consequence of his intoxication while operating a motor vehicle." General Statutes (Rev. to 1985) § 53a-56b. We agree.

General Statutes (Rev. to 1985) § 14-227a (a) provides in pertinent part that "[n]o person shall operate a motor vehicle on a public highway . . . while under the influence of intoxicating liquor." Subsection (c) provides in pertinent part that "[i]n any criminal prosecution for a violation of subsection (a) . . . of this section, evidence respecting the amount of alcohol . . . in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent" provided that seven specified procedural requirements are met. Subsection (d) provides in pertinent part that "[e]vidence admitted under the provisions of subsection (c) shall have the following force and

effect: . . . (4) evidence that at [the] time [of the alleged offense] the ratio of alcohol in the blood was ten-hundredths of one per cent or more of alcohol, by weight, shall be prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section."

The defendant's claim arises out of the following procedural history. Initially, the defendant sought a ruling from the court excluding the results of his blood test on the basis, inter alia, that the procedural requirements of General Statutes (Rev. to 1985) § 14-227a (c) had not been met.[2] The defendant also asked the court to "incorporate" the provisions of General Statutes (Rev. to 1985) § 14-227a (c) and (d), into the charge he faced under General Statutes (Rev. to 1985) § 53a-56b. The court declined to rule on the defendant's claims.[3]

The state presented Abraham Stolman, the state toxicologist, who testified as to the results of the blood test. During Stolman's testimony, the state requested the court to take judicial notice of General Statutes (Rev. to 1985) § 14-227a (d). The defendant objected, reminding the court, inter alia, that it had specifically declined to rule that the provisions of General Statutes (Rev. to 1985) § 14-227a applied to the prosecution of the defendant, and claiming that the provisions of General Statutes (Rev. to 1985) § 14-227a (d) were, therefore, irrelevant because the defendant was not charged with a violation of General Statutes (Rev. to 1985) § 14-227a (a). The court overruled the defendant's objection, and the defendant excepted.

---

[2] This claim was clearly without merit. See State v. Singleton, 174 Conn. 112, 115–16, 384 A.2d 334 (1977).

[3] The court stated that it did not have to rule on those claims because the state "does not have two sets of standards" depending on whether the prosecution is under General Statutes (Rev. to 1985) § 14-227a or under General Statutes (Rev. to 1985) § 53a-56b, and because the defendant had not established that the alleged procedural requirements had not been met.

The court thereafter declared in the jury's presence that it would "take judicial notice of [General Statutes (Rev. to 1985) § 14-227a (d)] insofar as is applicable to defining intoxication." It stated to the jury as follows: "So, ladies and gentlemen of the jury, the court takes judicial notice of this law. Evidence that at such time the ratio of alcohol in the blood was ten hundredths of one percent or more of alcohol by weight shall be prima facie evidence that the defendant was under the influence of intoxicating liquor." Stolman continued his testimony, which included further statements as to the effects of alcohol on the ability to drive a car. He testified that "at .10 and above all individuals are affected to a sufficient degree and that, with respect to blood alcohol level of .18 percent . . . [t]he higher you go in alcohol level, the . . . greater the effect is."

During its final instructions to the jury, the court specifically reminded the jury that it had taken judicial notice of General Statutes § 14-227a (d), and read the statutory provision to the jury.[4] The court continued its charge: "Now, by using this prima facie evidence, and all of the other evidence presented, it is for you to determine beyond a reasonable doubt whether or not the defendant in this case was intoxicated. The statute concerning ten-hundredths of 1 percent, .10 weight by alcohol within a person's blood, presumes that such

[4] The court stated: "[Y]esterday the court took judicial notice that our Legislature has enacted a law that says in effect that .10 or more by weight of alcohol in a person's blood shall be prima facie evidence that he was under the influence of intoxicating liquor or insofar as the operation of his automobile is concerned. . . . One of the things you are entitled to do and I recalled to you before earlier during our charge, the fact that I took judicial notice of this part of the statute 14-227a (c), I believe it is that the Legislature has seen fit to describe, as you will recall, intoxication. I'm sorry. That's (d) which I'm not going to read you all the paragraph but only that part that I read to you yesterday. 'Evidence that at such time the ratio of alcohol in the blood was ten-hundredths of 1 percent or more of alcohol by weight shall be prima facie evidence that the defendant was under the influence of intoxicating liquor.' "

person is under the influence of alcohol unless other countervailing evidence shows that the defendant was in control of his faculties.

"In other words, this is a rebuttable presumption that the Legislature has seen fit. Accordingly, one of the questions for you to decide is, in view of the statute and in view of all the other evidence in the case, was the amount of alcohol consumed by the accused sufficient to so affect his mental, nervous and physical processes that he lacked to an appreciable degree the ability to function properly with relation to the operation of his automobile." The defendant duly excepted to these instructions.

We first consider and reject the state's argument that the defendant's claim is not reviewable because he did not raise it at trial with sufficient clarity to alert the court to his true position. The state points to the fact that the defendant initially requested the application of General Statutes (Rev. to 1985) § 14-227a (c) and (d) to his case.[5] While it is true that the defendant made an initial unsuccessful effort to persuade the court to incorporate the provisions of General Statutes (Rev. to 1985) § 14-227a (c) and (d) into General Statutes (Rev. to 1985) § 53a-56b, once that effort had failed it was clear to the court that the defendant objected to the incorporation of the provisions of General Statutes (Rev. to 1985) § 14-227a (d) without the protective procedural requirements of General Statutes (Rev. to 1985) § 14-227a (c).

We turn, therefore, to the merits of the defendant's claim. We conclude that the provisions of General Stat-

---

[5] The state also claims in its brief that the defendant filed a request to charge which invited the court to charge on the prima facie provisions of General Statutes (Rev. to 1985) § 14-227a (d). The alleged request to charge, which the state quotes in apparent good faith reliance on copies delivered to it at trial, however, is neither included in the copies of the defendant's requests to charge filed with the trial court, nor contained in the certified trial court file on record in this appeal.

utes (Rev. to 1985) § 14-227a (d) do not apply to a prosecution under General Statutes (Rev. to 1985) § 53a-56b. We reach this conclusion based on two factors: the plain language of the statute, which specifically limits its applicability; and the rationale of that specific limitation.

First, the language of General Statutes (Rev. to 1985) § 14-227a (d) confines those provisions to a prosecution under General Statutes (Rev. to 1985) § 14-227a (a) or (b). General Statutes (Rev. to 1985) § 14-227a (d) refers only to "[e]vidence admitted under the provisions of subsection (c)" of General Statutes (Rev. to 1985) § 14-227a. Subsection (c) refers only to the admissibility of evidence of a defendant's blood alcohol or drug level "[i]n any criminal prosecution for a violation of subsection (a) or (b) of this section." Subsections (a) and (b) of General Statutes (Rev. to 1985) § 14-227a refer to the motor vehicle violations of operation while under the influence of intoxicating liquor or drug, and operation while impaired by the consumption of intoxicating liquor, respectively. The legislature has, in very specific language, created a complex statutory scheme, balancing procedural protections for the defendant against prosecutorial benefits for the state. The statutory language specifically referring to violations of General Statutes (Rev. to 1985) § 14-227a (a) and (b) must, therefore, be read to exclude its applicability to other statutes.

Second, our Supreme Court has squarely held that the procedural provisions of what was General Statutes (Rev. to 1985) § 14-227a (c) apply only to a violation of General Statutes (Rev. to 1985) § 14-227a, and not to vehicular homicide offenses defined by the Penal Code. *State* v. *Singleton,* 174 Conn. 112, 115–16, 384 A.2d 334 (1977); see also *State* v. *Robarge,* 35 Conn. Sup. 511, 513–14, 391 A.2d 184 (1977). These provisions, which give detailed procedural protections to a

defendant charged under General Statutes (Rev. to 1985) § 14-227a, are inextricably linked to the prima facie evidentiary provisions of General Statutes (Rev. to 1985) § 14-227a (d). Only test results which have satisfied the procedural requirements of General Statutes (Rev. to 1985) § 14-227a (c) are entitled to the prima facie weight afforded them pursuant to General Statutes (Rev. to 1985) § 14-227a (d). To put it another way, the procedural protections of General Statutes (Rev. to 1985) § 14-227a (c) constitute the price which the statute requires the state to pay in order to gain the prosecutorial benefits afforded by General Statutes (Rev. to 1985) § 14-227a (d). Where the statute does not require the state to pay that price; *State* v. *Singleton,* supra; it does not confer the corresponding benefit.

The state argues that the subsequent amendment of General Statutes § 53a-56b; see footnote 1, supra; reveals the legislature's intent that General Statutes § 53a-56b be interpreted consistently with General Statutes § 14-227a. Although the purpose of the 1985 amendment was to clarify the legislature's intent that the term "intoxication," as used in General Statutes (Rev. to 1985) § 53a-56b, referred to the same level of inebriation as the phrase "under the influence of intoxicating liquor," as used in General Statutes § 14-227a; *State* v. *McKenna,* 11 Conn. App. 122, 130–31, 525 A.2d 1374 (1987); the legislature did not see fit to add to General Statutes § 53a-56b either the procedural protections or prosecutorial benefits defined by General Statutes (Rev. to 1985) § 14-227a.[6]

On the basis of our conclusion that the provisions of General Statutes § 14-227a do not apply to a prosecution under General Statutes § 53a-56b, we must decide whether the trial court's instructions to the jury regard-

---

[6] General Statutes § 14-227a has been subsequently amended further. See General Statutes (Rev. to 1987) § 14-227a.

ing the effect of the prima facie provisions of General Statutes (Rev. to 1985) § 14-227a (d) on its determination of whether the defendant was intoxicated within the meaning of General Statutes (Rev. to 1985) § 53a-56b requires reversal. "The question whether reversal is required because of this error depends on the likelihood that it influenced the jury. We have stated that in cases involving constitutional error, the test is whether it is reasonably possible that the jury were misled, and in cases not involving a constitutional error, whether it is reasonably probable that the jury was misled. *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975)." *State* v. *Shifflett,* 199 Conn. 718, 754, 508 A.2d 748 (1986). Since our conclusion rests on statutory grounds, and is not of constitutional magnitude, it must be determined whether it was reasonably probable that the jury was misled. We conclude that under the circumstances of this case, where the court during both the presentation of testimony and in its charge to the jury, emphasized the effect of General Statutes (Rev. to 1985) § 14-227a (d) on the jury's deliberations, and where counsel for the state in closing argument similarly and repeatedly urged the jury to apply the statute, it was reasonably probable that the court's error misled the jury as to the determination of the defendant's intoxication.

We note, first, that the court's instructional error was a continuation of its midtrial ruling, made at the request of the state, taking judicial notice of the effect of General Statutes (Rev. to 1985) § 14-227a (d). The court made that ruling in the presence of the jury and immediately followed it by reading the provisions of General Statutes (Rev. to 1985) § 14-227a (d) to the jury. Moreover, the timing of that procedure was significant. Stolman had just testified that the result of the test of the defendant's blood alcohol level was .18 percent. The court immediately thereafter read General Stat-

utes (Rev. to 1985) § 14-227a (d) to the jury. The state then continued to examine Stolman, and elicited his testimony that all persons are adversely affected who have a blood alcohol level of .10 percent or more. The jury was presented with the testimony of the defendant's blood alcohol level in the damaging context of Stolman's expert opinion buttressed by the weight that the law itself lent to such evidence.

Furthermore, the court's charge emphasized the role of the statute in the jury's determination of the issue of the defendant's intoxication. The court instructed the jury that it had taken judicial notice of the statute, and further that "[t]he statute concerning ten-hundredths of 1 percent, .10 weight by alcohol within a person's blood, presumes that such person is under the influence of alcohol unless other countervailing evidence shows that the defendant was in control of his faculties. In other words, this is a rebuttable presumption that the Legislature has seen fit." The court then told the jury that "[a]ccordingly, one of the questions for you to decide, in view of the statute and in view of all the other evidence in the case, was the amount of alcohol consumed by the accused sufficient to so affect his mental, nervous and physical processes that he lacked to an appreciable degree the ability to function properly with relation to the operation of his automobile." Thus, the court added the heavy weight of the statutory presumption to the jury's determination of whether the defendant was intoxicated. Moreover, the court's charge was preceded by the state's closing argument. In that argument, the state referred at least nine times to the defendant's blood alcohol level as exceeding the "legal limit." Thus, the court's charge reinforced the state's argument that the law itself deemed the defendant to have been intoxicated.

We note finally that the critical issue in this case was whether the defendant was intoxicated at the time of

the accident. In determining whether a jury instruction was misleading, it is appropriate to consider how it bears on the issues in the case. See generally *State v. Huff,* 10 Conn. App. 330, 331–32, 523 A.2d 906 (1987). In this case, while the state's evidence was strong, the issue of the defendant's intoxication was nonetheless in dispute. The state produced evidence, inter alia, of the defendant's excessive speed and reckless manner of driving, his admission that he had been drinking since the previous evening and that he did not recall when he stopped, his high blood alcohol level, and the usual effect of such a blood alcohol level on a person of a weight of 160 pounds. There was evidence of the defendant's appearance at the scene of the accident, his failure to stop, his lack of awareness of having hit McCarter, and the opinion of the physician who took his blood sample at the hospital, based on his appearance and speech, that he was intoxicated.

There was also evidence, however, that the first police officer at the scene of the accident, who observed the defendant for two to three minutes, detected no signs of intoxication, that the defendant had no trouble following instructions, and that his performance of the physical tests administered to evaluate his level of alcohol influence ranged from "fair" to "sure." Moreover, there was evidence that the defendant had only two hours of sleep the previous night, that he had no difficulty in understanding that he was waiving his rights when he gave the police a statement, and that he had no difficulty in signing the blood test consent form.

We reject the state's argument that the court's instruction was not misleading because it referred the jury, not only to the statute, but also to "all the other evidence in the case" in determining whether the defendant was intoxicated. The critical error in the court's charge was not that it permitted the jury to find the

defendant guilty solely on the basis of the test results, but that it added to the effect of the other evidence the weight of the law's presumption as to the effect of a blood alcohol level of .10 percent or more. Under these circumstances, we conclude that it was reasonably probable that the jury was misled by the court's instruction.[7]

There is error in part, the judgment of conviction as to manslaughter in the second degree with a motor vehicle while intoxicated is set aside, and the case is remanded for a new trial on that count of the information.

In this opinion the other judges concurred.

---

[7] The state, in its brief, urges us, in the event that we find a nonconstitutional error, to apply a harmless error analysis based solely on the claim that the evidence as to the defendant's guilt was overwhelming. It cites four cases in support of this claim: *State v. Silva,* 201 Conn. 244, 251, 513 A.2d 1202 (1986); *State v. Brown,* 199 Conn. 14, 25, 505 A.2d 690 (1986); *State v. Talton,* 197 Conn. 280, 288–90, 497 A.2d 35 (1985); *State v. Conroy,* 194 Conn. 623, 626–27, 484 A.2d 448 (1984). These cases are inapplicable, since they involve the standard that governs where there is a claim that evidence was erroneously admitted. This is not the appropriate analysis to determine whether a nonconstitutional instructional error requires reversal. See *State v. Shifflett,* 199 Conn. 718, 754, 508 A.2d 748 (1986).