[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT, MOTIONFOR JUDGMENT NOTWITHSTANDING THE VERDICT AS TO ROBERT TULISANOINDIVIDUALLY AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
On January 18, 1995 the jury returned a verdict in the above-captioned action in favor of the plaintiffs, Janice J. Swift, Amy Beare and Valerie Beare. The complaint alleges that the defendant, My Brother's Place, and the defendant, Robert Tulisano, permittee of My Brother's Place engaged in wilful, wanton and reckless misconduct in that an employee of My Brother's Place sold alcohol to Keith Royce at a time when she knew or should have known that Royce was intoxicated.
The defendants have filed a Motion to Set Aside the Verdict on the grounds that the verdict is contrary to the law and evidence in that no reasonable jury could have found that the defendants engaged in wilful, wanton and reckless misconduct. The defendants also claim that punitive damages should not have been awarded to the plaintiffs because there was insufficient evidence as to the defendant's wilful, wanton and reckless misconduct. Finally, the defendants claim that the verdict is contrary to the law insofar as the permittee, Robert Tulisano, should not be held liable for the misconduct of the agents or employees of My Brother's Place. The defendants have also filed a Motion for Judgment Notwithstanding the Verdict as to both defendants and a Motion for Judgment Notwithstanding the Verdict as to Robert Tulisano based on the same essential grounds as those advanced in support of the Motion to Set Aside the Verdict.
Litigants have a constitutional right to have factual issues resolved by the jury. Mather v. Griffin Hospital, 207 Conn. 125,138, 540 A.2d 666 (1988). This right encompasses the right to have the jury and not the court decide issues of fact as to which reasonable people may reach different conclusions. Id. Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. Id., 139; see A-G Foods, Inc. v. Pepperidge Farm, Inc.,
CT Page 7372216 Conn. 200, 206, 579 A.2d 69 (1990); Berry v. Loiseau, 223 Conn. 786,807, 808, 614 A.2d 414 (1992). "The general rule in Connecticut is that a trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. Petyan v. Ellis, 200 Conn. 243, 244, 510 A.2d 1337
(1986). "A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed; (citations omitted) or if the evidence is so weak that it would be proper for the court set aside a verdict rendered for the other party. Mott v.Hillman, 133 Conn. 552, 555, 52 A.2d 861 (1947)., Boehm v. Kish,201 Conn. 385, 389, 517 A.2d 624 (1986).
In Kowal v. Hofher, 181 Conn. 355, 436 A.2d 1 (1980) the Connecticut Supreme Court first recognized a cause of action for wanton and reckless misconduct against one who sells liquor. The Court noted that actions alleging negligence against one who furnished liquor to a person who became voluntarily intoxicated and in consequence of his intoxication injured himself or another were not allowed under the rule established by the following cases:Nelson v. Steffens, 170 Conn. 356, 361, 365 A.2d 1174 (1976); Moorev. Bunk, 154 Conn. 644, 649, 228 A.2d 510 (1967); Nolan v. Morelli,154 Conn. 432, 436, 226 A.2d 383 (1967); Slicer v. Quigley,180 Conn. 252, 255, 429 A.2d 855 (1980). The Kowal Court stated that the reason underlying the rule is that the proximate cause of the intoxication was not the sale or furnishing of the liquor but the consumption of it by the purchaser or donee. 181 Conn. at 357-358.
The Court in Kowal held that the policy considerations which justified protecting both a vendor and a social host from common-law liability for the injurious consequences of negligent conduct in the sale or serving of alcoholic beverages to another did not apply when the conduct constitutes wanton and reckless misconduct. The Court stated its rationale as follows:
 This conclusion is based primarily on the notion that one ought to be required, as a matter of policy, to bear a greater responsibility for consequences resulting from his act when his conduct is reckless or wanton than when his conduct is merely negligent. See Restatement (Second), 2 Torts 501, comment (a).
The Court in Kowal treated wanton, reckless and wilful misconduct as meaning essentially the same thing: CT Page 7373
 "Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct." Menzie v. Kalmonowitz, 107 Conn. 197, 199, 139 A.2d 698 (1928).
Kowal v. Hofher, supra, at 361-62
The evidence in the present case was sufficient to permit the jury to find the following facts. During the afternoon hours of May 5, 1990, Keith Royce began consuming alcohol. By approximately 7:00 p.m. that evening Royce had consumed, in his words, "quite a bit of alcohol." At 7:00 p.m. Thomas Fickett, a bartender at Farrell's Restaurant in Portland, Connecticut, observed Royce outside walking towards Farrell's and believed that Royce was intoxicated. That belief was confirmed by Fickett's observations of Royce once he had entered Farrell's.
After staying at Farrell's for a short period of time, Royce went home where he continued to drink more alcohol. Thereafter, he went to My Brother's Place Care in Cromwell, Connecticut, arriving at about 10:00 p.m. Royce testified that he was intoxicated at his home before arriving at My Brother's Place, and that he was intoxicated while he was at My Brother's Place. Mr. St. Paul, who sat with Royce at My Brother's Place, testified that when he first observed Royce that evening he knew instantly that Royce was intoxicated. St. Paul said that Royce was loud, belligerent and staggered when he walked up to the bar to get a drink. He saw the barmaid serve Royce a beer, but could not say whether she had observed Royce as he staggered up to the bar because the bar was crowded with seventy five to one hundred patrons, and there were seven people standing between Royce and the bar when Royce left his seat and approached the bar to order his beer. St. Paul heard Royce make an insulting comment to a patron who had accidentally bumped into St. Paul. However, when St. Paul told Royce to sit down, Royce complied without engaging in any other belligerent conduct. Before St. Paul left My Brother's Place that evening he asked Royce's companion, who was St. Paul's neighbor, if he wanted a ride home. St. Paul testified that he had offered the companion a ride home because "I didn't want him riding with Keith (Royce) in the shape he was in." CT Page 7374
In Futterleib v. Mr. Happy's, Inc., 16 Conn. App. 497,548 A.2d 728 (1988), and Coble v. Maloney, 34 Conn. App. 655, (1994), the Appellate Court considered whether the evidence introduced at trial was sufficient to have permitted the jury to find the defendants liable of wilful, wanton and reckless misconduct.
The Court in Futterleib described the facts which supported the jury's finding that the defendant, the Trepid Fox bar, engaged in reckless, wilful and wanton misconduct:
 On December 5, 1983, Douglas Medina and James Mosakowski left their place of employment in Waterbury and proceeded in separate vehicles to Mr. Happy's, a Waterbury bar that features exotic dancers. There the two drank both beer and several shots of liquor. After approximately two hours at Mr. Happy's, Mosakowski and Medina proceeded to the Trepid Fox, a bar approximately two miles away. At the Trepid Fox, Medina drank beer and several shots of tequila. He and Mosakowski were treated to a round of shots by a bartender at the Trepid Fox and by one of the dancers. Mosakowski observed Medina swaying back and forth while standing at the bar and noticed that Medina was having some difficulty standing. In addition, Mosakowski observed that Medina was staggering. At no time did any employee of the Trepid Fox refuse to serve Medina or ask him to leave, despite his being observed "biting the bar," which the jury could have interpreted as his head dropping and contacting the top of the bar.
16 Conn. App. at 499.
The Court in Futterleib found that the foregoing facts were sufficient to permit the jury to find that the defendant bar had engaged in wilful, wanton and reckless misconduct in serving Medina, who was already visibly intoxicated. The Court upheld the verdict against the bar in favor of the plaintiff, who was injured in an automobile accident caused by Medina.
The jury's verdict against the defendant bar and its permittee was also upheld by the Appellate Court in Coble. In that case the evidence was that the defendant, Maloney, went to New Haven on the night in question with the intent to become intoxicated. He had two or three "White Russians" immediately prior to entering the defendant, The Pub Cafe. After arriving at The Pub Cafe at about CT Page 7375 9:30 p.m., Maloney drank two to three more White Russians. He then walked to Partners, a bar located near The Pub Cafe. Maloney stayed briefly at Partners where he consumed two more White Russians. At approximately 11:30 p.m., in an intoxicated state, Maloney walked back to The Pub Cafe, where he was served one more White Russian. Maloney then lost memory of any further events until he woke up at the Meriden-Wallingford Hospital after driving his automobile south in the northbound lanes of Interstate 91 and colliding with the automobile driven by the plaintiff.
In upholding the verdict of the jury against The Pub Cafe and its permittee the Court stated:
 The plaintiff's case-in-chief included Maloney's testimony concerning his intent to become intoxicated, the number of drinks he had consumed, his opinion that he was intoxicated upon his return to The Pub Cafe, and the failure of his memory after having another White Russian at The Pub Cafe. The jury reasonably could have inferred from the evidence set forth that Maloney manifested signs of intoxication and, therefore, concluded that The Pub Cafe engaged in "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."
34 Conn. App. at 671.
While there was no direct evidence that the intoxicated person, Royce, manifested overt signs that he was intoxicated which were observed by an employee of My Brother's Place, such as the "biting the bar" described in Futterleib, Coble makes it clear that such evidence is not a prerequisite to sustaining a verdict in an action for wilful, wanton and reckless misconduct.
The evidence before the jury in Coble was completely devoid of any overt signs of intoxication by the allegedly intoxicated person. There was some evidence in this case that Royce displayed overt signs of intoxication: staggering and loud speech. Moreover, the jury could infer that the defendant should have known that Royce was intoxicated based on Royce's own testimony, the testimony of Fickett and the testimony of St. Paul.
There clearly was not a strong showing of overt intoxication by Royce in this case. Therefore, there was not a strong showing that the defendants engaged in "highly unreasonable conduct, CT Page 7376 involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." see Coble, supra. However, "a party has the same right to submit a weak case as he has to submit a strong one. Fritz v. Gaudet, 101 Conn. 52, 53,124 A. 841 (1924). See Lukas v. New Haven, supra, 210-11; Crowell v.Palmer, 134 Conn. 502, 505, 58 A.2d 729 (1948); Maltbie, Conn. App. Proc. 215 and 217; Stephenson, Conn. Civ. Proc. (2d Ed.) 192f;Hinchliffe v. American Motors Corporation, 184 Conn. 607, 609-10,440 A.2d 810 (1981)." Angelo Tomasso, Inc. v. Armor Construction Paving, Inc., 187 Conn. 544, 547-48, 447 A.2d 406 (1982); see Loganv. O'Neill, 187 Conn. 721, 728-29, 448 A.2d 1306 (1982)." Falkerv. Samperi, 190 Conn. 412, 419, 461 A.2d 681 (1983). In light ofCoble v. Maloney, supra, this court cannot say that there was insufficient evidence to permit the jury to find My Brother's Place liable for wilful, wanton and reckless misconduct in serving alcohol to Royce.
The defendants argue that the jury should not have awarded punitive damages because there was insufficient evidence of wilful, wanton or reckless conduct. It is well established in this state that punitive or exemplary damages may be awarded in a situation where the jury finds wilful, wanton or reckless conduct on the part of the defendant. Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509,532, 562 A.2d 1100 (1989). As more fully set forth above, there was sufficient evidence presented in this case to permit the jury to find that the conduct of the defendants was wilful, wanton or reckless.
The defendants also argue that Robert Tulisano, the permittee of My Brother's Place, should not be held responsible for the wilful, wanton and reckless actions of his employees. It does not appear that any Court in this state has specifically decided the issue of whether a permittee is liable for the wanton and reckless conduct of his employees. However, both the statutory scheme and the common law pertaining to the sale of liquor in this state clearly support the conclusion that a permittee is liable for the wanton, wilful and reckless acts of his agents or employees.
In Pierce v. Albanese, 144 Conn. 241, 252, 129 A.2d 606
(1957), the Court stated:
 If one desires to engage in the liquor business and secures upon his own application a permit to do so, he assumes of necessity the risk of a great variety of situations which could impose liability upon him. CT Page 7377
The following statutes and regulations impose liability on the permittee for the actions of his agents or employees, even if such actions were contrary to the instructions of the permittee:
 Sec. 30-86. Sales to minors, intoxicated persons and drunkards. Exceptions.
 Any permittee who, by himself, his servant or agent, sells or delivers alcoholic liquor to any minor, or to any intoxicated person, or to any habitual drunkard, knowing him to be such an habitual drunkard, shall be subject to the penalties of section 30-113.
 Sec. 30-102. Dram Shop Act; liquor seller liable for damage by intoxicated person.
 If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars,
 30-6-A9. Permittee responsible for actions of employee or agent
 In disciplinary proceedings, it shall be no defense that an employee or agent of a permittee or backer acted contrary to order, or that a permittee or backer did not participate in the violating action or actions. A permittee and backer shall be held strictly liable for any violation of the statutes, regulations, policies and stipulations of the liquor control commission when such violation concerns their permit premises or their applications regarding their proposed permit premises.
 30-6-A24. Conduct of permit premises
 (i) A permittee will be held strictly accountable for the conduct of his permit premises.
In light of the foregoing statutes and regulations, which make CT Page 7378 the permittee liable for virtually all conduct which occurs in a bar, it appears clear that a permittee may be held liable at common law for the wilful, wanton and reckless conduct of his employees in serving liquor to an intoxicated person.
For the foregoing reasons the Motions to Set Aside the Verdict and the Motions for Judgment Notwithstanding the verdict are denied. Judgment may enter in favor of the plaintiffs on the verdict.
By the Court, Aurigemma, J.