JOHN A. O'DELL, ADMINISTRATOR (ESTATE OF PATRICK O'DELL) *v.* KENNETH KOZEE ET AL.
(AC 31771)

DiPentima, C. J., and Beach and Bear, Js.

---

Argued January 20—officially released May 24, 2011

second degree), 53a-181a (creating public disturbance) and 53a-182 (disorderly conduct).

*Elycia D. Solimene*, for the appellants (defendants).

*Ron Murphy*, for the appellee (plaintiff).

*Jan C. Trendowski* and *Mirza Refai Arefin*, certified legal intern, filed a brief for the Connecticut Restaurant Association as amicus curiae.

*William M. Bloss* and *David M. Bernard* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

BEACH, J. The defendants, Kenneth Kozee, Lori Bard and L.C.B. Entities, LLC,[1] appeal from the judgment of the trial court, rendered after a jury trial, awarding damages to the plaintiff, John A. O'Dell, administrator of the estate of Patrick O'Dell. On appeal, the defendants claim that the court abused its discretion by (1) granting the plaintiff's motion in limine, (2) failing to instruct the jury regarding visible intoxication, (3) denying their motion to set aside the verdict and for a directed verdict and (4) making various erroneous evidentiary rulings. We agree with the defendants' third claim and, accordingly, reverse the judgment of the trial court.[2]

---

[1] Kenneth Kozee is the permittee of the establishment at issue, the Deja Vu Restaurant. L.C.B. Entities, LLC, is the corporate entity that was doing business as the Deja Vu Restaurant. Lori Bard is the principal member of L.C.B. Entities, LLC.

[2] Because we conclude that it is necessary to reverse the judgment on the basis of the defendants' third claim, we do not address their remaining

The following facts, which the jury reasonably could have found, and procedural history are relevant to the defendants' appeal. On September 5, 2006, at approximately 7 p.m., Joel Pracher drove himself and Patrick O'Dell to the Deja Vu Restaurant in Plainville. Pracher and Patrick O'Dell participated in a billiards league, and their team competed at the restaurant every other Tuesday night.[3] On this particular night, Pracher had consumed five beers, two shots of alcohol and one round of blackberry brandy before approximately 11 p.m.[4] Pracher admitted that his consumption of alcohol caused him to become what he considered to be "drunk." Although Pracher admitted that he was drunk, he was not exhibiting any physical signs that would indicate such. For example, Pracher had no difficulty walking, he was not slurring his speech, nor did he engage in any noticeably loud or boisterous behavior. On at least one occasion, Pracher purchased an alcoholic beverage from a bartender of the restaurant while he was drunk.

At approximately 12:45 a.m., Pracher and Patrick O'Dell left the restaurant. Although Pracher was too intoxicated to remember most of what occurred, he did recall that he was drunk when he left the bar, and he also remembered getting in his vehicle with Patrick O'Dell so he could give him a ride home. Pracher drove in the westbound lane on West Main Street. Approximately two miles from the restaurant, at the intersection of West Main Street and Strong Court, Pracher's vehicle collided with the left end of a box truck that was parked

claims. See *Peterson* v. *Woldeyohannes*, 111 Conn. App. 784, 789 n.6, 961 A.2d 475 (2008).

[3] The restaurant sponsored the billiards team to which Pracher and Patrick O'Dell belonged. Kozee allowed their team to play for free and also offered each team member one free drink on the nights when they competed.

[4] Pracher testified that he had not consumed any alcoholic beverages before arriving at the restaurant. He further testified that he was too intoxicated to remember if he had consumed more alcoholic beverages after 10 to 11 p.m.

legally on the north shoulder of the westbound lane on West Main Street.[5] The speed limit on West Main Street was thirty-five miles per hour, and Pracher was estimated to have been traveling at a speed of sixty miles per hour. The passenger side door of Pracher's vehicle was torn off upon impact, and Patrick O'Dell was ejected from the vehicle and landed in the eastbound lane of West Main Street. A tow truck traveling in the eastbound lane of West Main Street drove by almost immediately after the collision had occurred, and although it took evasive action to avoid contact, the truck ran over Patrick O'Dell's chest. He was rushed to Hartford Hospital, but he died as a result of his injuries. A toxicology report subsequently revealed that Pracher had a blood alcohol content of 0.187 shortly after the accident had occurred.

On June 4, 2007, the plaintiff filed a one count wrongful death claim alleging, inter alia, that the defendants were liable pursuant to the Dram Shop Act, General Statutes § 30-102.[6] The trial commenced on October 28,

---

[5] Investigating officers determined that the box truck was parked in a manner such that there was ample room available for vehicles traveling on West Main Street in the westbound lane safely to have gone around the box truck.

[6] General Statutes § 30-102 provides: "If any person, by such person or such person's agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of two hundred fifty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of two hundred fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller of such person's or persons' intention to bring an action under this section. Such notice shall be given (1) within one hundred twenty days of the occurrence of such injury to person or property, or (2) in the case of the death or incapacity of any aggrieved person, within one hundred eighty days of the occurrence of such injury to person or property. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or

2009. On November 6, 2009, the jury returned a verdict in favor of the plaintiff and awarded him $4 million in damages. The defendants filed a motion to reduce the jury verdict to $250,000 pursuant to § 30-102, which the court granted. The defendants also filed a motion to set aside the verdict and for a directed verdict on November 16, 2009, alleging that "[t]here was no evidence produced during the trial to support the verdict as it was rendered by the jury." The court denied the motion, and this appeal followed.

On appeal, the defendants claim that the court abused its discretion by denying their motion to set aside the verdict and for a directed verdict. Specifically, they argue that no evidence was presented from which the jury reasonably could have concluded that Pracher was "intoxicated," pursuant to § 30-102 and our Supreme Court's gloss of the term, at the time the restaurant sold him intoxicating liquor. We agree.

To prevail in an action brought pursuant to § 30-102, a plaintiff must prove that "there was (1) a sale of intoxicating liquor (2) to an *intoxicated* person (3) who, in consequence of such intoxication, causes injury to the person or property of another." (Emphasis in original; internal quotation marks omitted.) *Coble* v. *Maloney*, 34 Conn. App. 655, 662, 643 A.2d 277 (1994). The dispositive question on appeal is whether a plaintiff is required to prove "visible intoxication"[7] in order to satisfy the second element of a cause of action pursuant to § 30-102. The plaintiff argues that he is not required to prove "visible intoxication" because the statute merely requires sale of intoxicating liquor to an "intoxicated"

omission complained of. Such injured person shall have no cause of action against such seller for negligence in the sale of alcoholic liquor to a person twenty-one years of age or older."

[7] "Visible intoxication" is shorthand for intoxication that is "manifest" or perceivable by the senses of others, and is not necessarily limited strictly to the sense of vision. See, e.g., *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349–50, 493 A.2d 184 (1985).

person, not a "visibly intoxicated" person. The plaintiff further argues that our Supreme Court never used the term "visible intoxication" when discussing the elements of a cause of action pursuant to § 30-102. The defendants argue, however, that case law has established that a cause of action brought pursuant to § 30-102 requires some evidence of "visible intoxication." We agree with the defendants.

The plaintiff is correct in his assertion that § 30-102 does not contain the phrase "visible intoxication." Our Supreme Court, however, has provided the following definition of "intoxication" as that term is used in § 30-102: "To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor. Intoxication means an abnormal mental or physical condition due to the influence of intoxicating liquors, *a visible excitation* of the passions and impairment of the judgment, or a derangement or impairment of physical functions and energies. *When it is apparent* that a person is under the influence of liquor, when his manner is unusual or abnormal and is reflected in his walk or conversation, when his ordinary judgment or common sense are disturbed or his usual will power temporarily suspended, *when these or similar symptoms result from the use of liquor and are manifest,* a person may be found to be intoxicated. He need not be 'dead-drunk.' It is enough if by the use of intoxicating liquor *he is so affected in his acts or conduct that the public or parties coming in contact with him can readily see and know this is so.*" (Emphasis added.) *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 349–50, 493 A.2d 184 (1985). Although the Court in *Sanders* did not use the exact term "visible intoxication," its definition clearly establishes that in order to qualify as intoxicated pursuant to § 30-102, an individual must exhibit some type of physical symptomology in such a way that an observer reasonably could perceive that the individual was indeed under the influence of alcohol to some noticeable extent.

Our Supreme Court subsequently revisited the *Sanders* definition of intoxication in *Wentland* v. *American Equity Ins. Co.*, 267 Conn. 592, 840 A.2d 1158 (2004). In *Wentland*, the Court noted that "the word 'intoxication' has various meanings in our law, depending on the context in which it is used." Id., 603. The court reiterated the *Sanders* definition of intoxication and stated that the definition "is a plain indication that there may be levels of inebriation that are less severe than intoxication. Indeed, common sense dictates that one's behavior will be influenced to differing degrees depending on what, and how much, alcoholic liquor one had consumed. Similarly, alcoholic liquor may tend to affect some persons differently than it does others, depending on a number of factors, for instance, a person's body weight, a person's tolerance to alcohol, and what other food or beverages, if any, a person has consumed within the same time frame. Thus, under our definition in *Sanders*, it is possible to be 'affected to some extent by' alcoholic liquor, without being 'intoxicated.' " Id., 604–605.

Additionally, this court addressed the issue of intoxication pursuant to § 30-102 in *Hayes* v. *Caspers, Ltd.*, 90 Conn. App. 781, 881 A.2d 428, cert. denied, 276 Conn. 915, 888 A.2d 84 (2005). In *Hayes*, "[t]he [trial] court directed a verdict on the plaintiff's dram shop claim because it found that, although [the driver] himself testified that he had been intoxicated on the night in question, the plaintiff presented no evidence that [the driver] was *visibly* intoxicated." (Emphasis in original.) Id., 802. We held that, in light of *Sanders*, the plaintiff's failure to provide any evidence of visible intoxication was "fatal to the plaintiff's claim."[8] Id. Therefore, on the

[8] We note the legislative silence regarding § 30-102, as to the specific issue of visible or perceivable intoxication, following *Sanders*, *Wentland* and *Hayes*. See *Craig* v. *Driscoll*, 262 Conn. 312, 327, 813 A.2d 1003 (2003). Nevertheless, we "draw no reliable inferences from the legislature's failure to respond" to our holding in *Hayes*. Id.

basis of the case law previously discussed, we conclude that to prove intoxication pursuant to § 30-102, a plaintiff must present evidence showing visible or perceivable intoxication.

The plaintiff maintains, however, that requiring proof of visible or perceivable intoxication to sustain a cause of action under § 30-102 is inconsistent and irreconcilable with *Craig* v. *Driscoll*, 262 Conn. 312, 813 A.2d 1003 (2003). In *Craig*, our Supreme Court stated that § 30-102 "covers all sales of liquor that result in an intoxicated person causing injury, irrespective of the bar owner's knowledge or state of mind. The act thereby provides an action in strict liability, both without the burden of proving the element of scienter essential to a negligence action and without the benefit of the broader scope of recovery permitted under such an action." Id., 328. The plaintiff argues that requiring proof of visible or perceivable intoxication contradicts *Craig* because the court in that case expressly stated that a plaintiff has no burden to prove that a permittee or bartender knew that the patron was intoxicated. Id. There is no contradiction. In *Sanders*, the court simply stated that the element of intoxication in § 30-102 requires the exhibition of visible or perceivable symptoms from which an observer could discern that the individual was under the influence of alcohol. *Sanders* v. *Officers Club of Connecticut, Inc.*, supra, 196 Conn. 349–50. The court did not hold that a permittee or bartender must know that the individual was exhibiting symptoms of being intoxicated. Under the *Sanders* definition of intoxication, an establishment would be strictly liable pursuant to § 30-102 if it sold intoxicating liquor to a patron who exhibited perceivable signs of intoxication, even if the permittee or bartender completely was unaware of and had no reason to know of such behavior. Thus, we conclude that the *Sanders* definition of intoxication is consistent with the fact that a permittee or bartender's

knowledge or state of mind is of no consequence when proving a claim pursuant to § 30-102.

Having concluded that proving intoxication pursuant to § 30-102 requires a plaintiff to offer evidence that tends to establish visible or perceivable intoxication, we now turn to the defendants' claim that the court abused its discretion by denying their motion to set aside the verdict and for a directed verdict.

"A motion to set aside the verdict should be granted if the jury reasonably and legally could not have reached the determination that [it] did in fact reach. . . . [Put differently], [i]f the jury, without conjecture, could not have found a required element of the cause of action, it cannot withstand a motion to set aside the verdict. . . . Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . As a corollary, it is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Marciano* v. *Kraner*, 126 Conn. App. 171, 177, 10 A.3d 572, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011).

The plaintiff argues that the court did not abuse its discretion in denying the motion to set aside the verdict and for a directed verdict because sufficient evidence was presented at trial from which the jury reasonably could have concluded that the restaurant sold Pracher intoxicating liquor while he was intoxicated. We conclude that the court abused its discretion in denying the defendants' motion.

The plaintiff contends that the following evidence was sufficient for the jury to conclude that Pracher was intoxicated: (1) The toxicology report stating that Pracher's blood alcohol content was 0.187 shortly after the accident had occurred, (2) the testimony of Detective Charles Smedick that the scene of the accident suggested that Pracher's consumption of alcohol was likely to have been a significant factor causing the collision, (3) Pracher's own admission that he was intoxicated and (4) the testimony of Scott Stevenson, an acquaintance who was at the restaurant on the night in question, that Pracher must have been intoxicated based on the amount of alcohol he saw Pracher consume. Although this evidence may have tended to prove that Pracher was intoxicated in the colloquial sense of the term, or for the purposes of General Statutes § 14-227a,[9] such evidence was not sufficient to prove that he was intoxicated as specifically defined in *Sanders* for purposes of § 30-102.[10]

A thorough review of the trial transcripts and the evidence submitted convinces us that no evidence was presented that tended to show that Pracher was exhibiting any visible or perceivable indications that he was intoxicated. Pracher testified that his speech and walking ability were not impaired. He further testified that

---

[9] General Statutes § 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol . . . ."

[10] The plaintiff specifically emphasizes his contention that the evidence showing that Pracher's blood alcohol content was 0.187 was sufficient for the jury to conclude that he was intoxicated. In *Coble*, we determined that the results of blood alcohol tests "are relevant to the determinations of whether an individual is intoxicated pursuant to § 30-102 . . . ." *Coble* v. *Maloney*, supra, 34 Conn. App. 666. We also stated, however, that § 30-102 "is not a per se offense that can be proven merely by establishing a blood alcohol level of 0.10 percent or greater at the time the elements of the offense occurred . . . ." Id., 664. Here, the plaintiff's medical expert testified that without knowing the specific times when Pracher consumed the alcohol, he could not opine as to if or when Pracher would have been exhibiting physical signs of intoxication. Therefore, under the facts of this case, the evidence of Pracher's blood alcohol content was insufficient to establish intoxication pursuant to *Sanders*.

he did not engage in any noticeably loud or boisterous behavior. The plaintiff did not present any evidence to the contrary. Accordingly, the failure to present evidence that Pracher was visibly or perceivably intoxicated was fatal to the plaintiff's claim.[11] See *Hayes* v. *Caspers*, supra, 90 Conn. App. 802. Accordingly, we conclude that the court abused its discretion in denying the defendants' motion to set aside the jury verdict and for a directed verdict.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.[12]

In this opinion the other judges concurred.

[11] On the evidence presented in this case, it may well be true that the unfortunate accident resulted from an impairment caused by the consumption of alcohol. The plaintiff argued that evidence of blood alcohol content is a more reliable means of determining intoxication than casual observation. Regardless of the merits of this argument, we are bound by our Supreme Court's application of the legislature's language.

[12] In a motion for reargument and reconsideration dated June 2, 2011, the plaintiff argues that ordering a new trial is a more appropriate disposition than directing judgment in favor of the defendants. He suggests that his reliance on the court's ruling on the motion in limine led him not to produce evidence of visible intoxication.

We disagree. The court's ruling on the motion in limine, read narrowly, was limited to the permissible scope of the parties' opening statement. The court indicated that the case would be tried on a strict liability theory, but specifically left open evidentiary questions.

Additionally, during the course of the argument on the motion to set aside the verdict, the plaintiff argued, consistent with his position on appeal, that evidence of visible intoxication was not required. In fact, he said that he had intended to make that point with this trial. Counsel for the plaintiff stated that he had discussed the issue with his clients prior to trial, and he reported that he had said to his clients, "I'm going to put forth this case without putting on evidence of visible intoxication because I want—and the [clients] agreed—we want a definitive appellate court decision that says you do not have to prove visible intoxication." It is not disputed that there was no evidence of a manifestation of intoxication presented during trial, and, in light of the actual ruling of the trial court and the intention of counsel,

_____

it seems unlikely that the plaintiff knew of evidence of such a manifestation but chose not to offer it into evidence because of the court's ruling on the motion in limine.